UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MAURICIO GIRALDO, M.D., *Plaintiff/Petitioner*, | § § § § § § § § § § § § | CIVIL ACTION NO: CV 10-563 |
| VS. | | |
| EAST TEXAS MEDICAL CENTER, JAMES BLAKE HARRISON, M.D., *Defendants/Respondents*. | | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW Plaintiff, MAURICIO GIRALDO, M.D., by and through the undersigned counsel, and files this Complaint for Injunctive Relief and Damages, showing the Court as follows:

### JURISDICTION AND VENUE

1.

The United States District Court has jurisdiction over this suit under 28 U.S.C. § 1331, which grants district courts original jurisdiction over all civil actions arising under the laws of the United States. Jurisdiction is also conferred under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. The causes of action complained of herein arose in the Eastern District of Texas and therefore, venue is appropriate pursuant to 28 U.S.CA § 1391(b).

1

## PARTIES

2.

Dr. Mauricio Giraldo (MAURICIO GIRALDO, M.D.) is a medical doctor licensed to practice medicine in the State of Texas with his principle place of business located at 3110 W. Main Street, Suite 150, Frisco, Texas 75034.

3.

East Texas Medical Center of Tyler (EAST TEXAS MEDICAL CENTER) is a Texas Domestic Nonprofit Corporation located in Tyler, Texas and may be served by through its registered agent Elmer G. Ellis, located in the Eastern District of Texas at 1000 South Beckham Street, Tyler, TX 75701.

4.

James Blake Harrison, M.D. (Harrison) is a medical doctor licensed to practice in Texas and is located in Tyler, Texas and may be served in the Eastern District of Texas at 700 Olympic Plaza Circle, Suite 510, Tyler, Texas 75701.

5.

EAST TEXAS MEDICAL CENTER and Harrison are collectively referred to herein as Defendants.

## INTRODUCTION

6.

MAURICIO GIRALDO, M.D. is a surgeon and Defendants are EAST TEXAS MEDICAL CENTER and Harrison located in Tyler, Texas. MAURICIO GIRALDO, M.D. is filing suit

against Defendants for injunction and damages arising from violations of (1) the Health Care Quality Improvement Act (HCQIA) and Tex. Health & Safety Code; (2) the Civil Rights Act; and for (3) defamation; (4) breach of contract; (5) tortuous interference with a business and with a prospective business relationship; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; and, (8) anticompetitive and anti-trust violations.

### STATEMENT OF FACTS

7.

MAURICIO GIRALDO, M.D. is an Hispanic, Harvard trained surgeon and is licensed to practice medicine in the State of Texas. In 2004 he entered a professional services agreement with EAST TEXAS MEDICAL CENTER to serve as an accredited transplant surgeon in the hospital's transplant surgery center in Tyler, Texas. However, soon after his arrival at EAST TEXAS MEDICAL CENTER, his economic competitors began sabotaging his medical practice and attacking his standing in the hospital and the medical community. These efforts were at all times herein made by physicians and other individuals acting as agents and employees of Defendant EAST TEXAS MEDICAL CENTER.

8.

MAURICIO GIRALDO, M.D.'s reputation and skill were repeatedly maligned both through the words and actions of the Defendants. For example, Defendant Harrison, Chairman of the Surgery Department, who was an economic competitor of MAURICIO GIRALDO, M.D.'s, repeatedly made defamatory comments about MAURICIO GIRALDO, M.D. to other surgeons. Once such example occurred when Harrison commented to Dr. Tom McGovern as he was about to go into surgery with MAURICIO GIRALDO, M.D. that "You better not let him kill him." Such comments were repeatedly made without any factual basis that MAURICIO

GIRALDO, M.D. was in any way an incompetent physician and were made in the presence of other staff members and members of the public who were present at the hospital. These comments achieved their intended result, which was to defame MAURICIO GIRALDO, M.D. and to lower his standing in the medical community.

9.

On another occasion, Defendant Harrison confronted Dr. Myrtha Basile, a medical oncologist who often made referrals to MAURICIO GIRALDO, M.D., and demanded to know why she was making referrals to MAURICIO GIRALDO, M.D. and saying that he did better surgery than MAURICIO GIRALDO, M.D.. The result of this comment was to eliminate patient referrals to MAURICIO GIRALDO, M.D..

10.

On January 10, 2009, Harrison accused MAURICIO GIRALDO, M.D. of "abandoning" his patients when he was delayed in responding to a nurse's call. Not only was this allegation not true in the medical meaning of the term, it was not true in any sense of the word. It was made up. Although, Harrison knew the true facts of the patient's case from the nurse in charge, he chose to ignore truth and proceeded to accuse MAURICIO GIRALDO, M.D. of patient abandonment and complained to Dr. John "Pete" Andrews, President of the Medical Staff, saying about MAURICIO GIRALDO, M.D., "Just throw him out."

11.

EAST TEXAS MEDICAL CENTER 's agents and employees, lead by Harrison, began a concerted effort to tortuously interfere with MAURICIO GIRALDO, M.D.'s medical practice. These actions were committed with malice, and were without privilege or excuse and with the intention of inhibiting economic competition.

12.

MAURICIO GIRALDO, M.D. experienced a growing lack of support among other members of the staff due to the coordinated assault on his character and ability. At one point, the directors of the CRNA's advised him that he needed to be careful because he was the victim of negative talk among the staff.

13.

In a continued pursuit of his right to be heard MAURICIO GIRALDO, M.D. repeatedly asked Robert Evans, Administrator/CEO and Drs. David Guss, Roy Gerard, and Tom Lowery for the opportunity for a hearing wherein he could present evidence on his behalf. However, he was denied this right. Eventually, Harrison, who served on the Medical Executive Committee (MEC) orchestrated the referral of one of MAURICIO GIRALDO, M.D.'s surgical cases to the Peer Review Committee. (*See* Ltr dtd 9/22/08 from EAST TEXAS MEDICAL CENTER to Giraldo attached hereto as Exhibit A ). Through this process, Harrison, MAURICIO GIRALDO, M.D.'s direct economic competitor, moved to restrict MAURICIO GIRALDO, M.D.'s privileges. Under these restrictions, MAURICIO GIRALDO, M.D. was only to be allowed to perform "non-complicated surgeries." Interestingly, the surgeries to be restricted were all the same ones Harrison performed. MAURICIO GIRALDO, M.D. sought to challenge this attempt to restrict his medical staff privileges by requesting a peer review hearing. However, he was never granted his due process rights pursuant to the Medical Staff Bylaws or state or federal law.

14.

Importantly, MAURICIO GIRALDO, M.D. had negotiated a provision in his employment contract whereby he would be ensured of such due process rights at EAST TEXAS

MEDICAL CENTER.  The reservation of these rights is borne out by a letter he sent to CEO Robert Evans, which contained this statement:

> "In Paragraph H regarding Termination, we would like to have some Comfort that I have an opportunity to cure whatever breach or default that may be alleged against me.  I would also, to the extent applicable, like to avail myself of the fair hearing and due process provisions of the medical staff bylaws, other than just having some board of directors take action against me without my ever having the opportunity to have a hearing." (*See* letter from MAURICIO GIRALDO, M.D. to Bob Evans dated Sept. 2004 attached hereto as Exhibit B).

15.

Regardless of MAURICIO GIRALDO, M.D.'s repeated requests to EAST TEXAS MEDICAL CENTER for an opportunity for notice and hearing, each request was ignored.  At no time was MAURICIO GIRALDO, M.D. given adequate notice of the proceedings nor was he given information outlining his procedures for appeal, both of which are blatant violations of his due process rights under the Medical Staff Bylaws, the HCQIA and Texas Health & Safety Code. (*See* Ltrs from EAST TEXAS MEDICAL CENTER to MAURICIO GIRALDO, M.D. and Medical Staff Bylaws Article X which are attached hereto as Exhibits B & C).  Instead, EAST TEXAS MEDICAL CENTER and Harrison unilaterally imposed the foregoing restrictions on MAURICIO GIRALDO, M.D.'s medical practice.

16.

These restrictions eliminated MAURICIO GIRALDO, M.D. as an economic competitor as they required him to find a proctor for any "complicated surgery" he was to perform. They required that MAURICIO GIRALDO, M.D. use proctors from a list of five names. (*See* Attachment A).  However, the restrictions were impossible to meet.  Of the five names, two of the named doctors refused to proctor.  One of the other surgeon's names he was given was a trauma surgeon who only worked part time at EAST TEXAS MEDICAL CENTER and worked

the rest of the time in Louisiana, which made it nearly impossible for him to be available to proctor. The two other doctors named to the list of proctors were partners of Dr. Harrison and who lacked the training, experience and skill evenly remotely commensurate with those possessed by the Harvard trained MAURICIO GIRALDO, M.D.. One of the two surgeons was so junior to MAURICIO GIRALDO, M.D. that he had just *recently* completed his residency and wasn't qualified to proctor MAURICIO GIRALDO, M.D.. (It was noted after MAURICIO GIRALDO, M.D. left EAST TEXAS MEDICAL CENTER that these junior surgeons began adopting techniques acquired from watching his surgeries.) Two surgeons, who qualified to proctor MAURICIO GIRALDO, M.D. and volunteered to do so, were not allowed to assist him. The remainder of the other surgeries they offered to proctor were also denied by Defendants. It is also important to note that at no time after any of the proctored cases, did anyone ask their opinions about the procedures they observed.

17.

With his inability to find proctors, combined with the defamatory statements of the Defendants, it became increasingly necessary for MAURICIO GIRALDO, M.D. to refer his surgical patients to other doctors. As expected, his practice declined severely and he suffered tremendous financial losses and emotional distress.

18.

Besieged and facing financial ruin, while at the same time growing tired of fighting a losing battle for due process, MAURICIO GIRALDO, M.D. was forced to submit his resignation from the EAST TEXAS MEDICAL CENTER Medical Staff. (*See* Ltrs dtd 10/22/07 and 2/18/09 from EAST TEXAS MEDICAL CENTER attached hereto as Exhibit D & E; *See also* Ltr dtd 2/16/099 from EAST TEXAS MEDICAL CENTER to Giraldo attached hereto as Exhibit F.).

Concerned about the possibility of an adverse report to other healthcare entities or of a report to the National Practitioner Date Bank (NPDB), MAURICIO GIRALDO, M.D. asked Dr. John "Pete" Andrews, President of the Medical Staff, if his resignation would be interpreted as a withdrawal of privileges to avoid an investigation to which Andrews said, "no". Subsequently, Dr. Andrews actually offered for him and two other physicians to write MAURICIO GIRALDO, M.D. letters of recommendation and reassured him that there would be no adverse report to other hospitals where MAURICIO GIRALDO, M.D. applied for medical staff privileges.

19.

MAURICIO GIRALDO, M.D. was forced to move to the Dallas area without his family where he opened his new medical laser practice in Frisco, and subsequently applied for privileges at Baylor Medical Center at Frisco. He was horrified to learn from Dr. Jim Laferny, VP of Medical Staff Affairs, that Baylor had received an adverse report from EAST TEXAS MEDICAL CENTER. (*See* Ltr dtd 5/12/09 from Baylor to Giraldo attached hereto as Exhibit G). This report included the false statement that MAURICIO GIRALDO, M.D.'s transplant privileges had been summarily suspended when they had not been. In fact, the letter from Baylor to Giraldo establishes that EAST TEXAS MEDICAL CENTER is still wrongfully reporting that Giraldo was summarily suspended. However, EAST TEXAS MEDICAL CENTER still boldly denies having done so. (*See* Ltr dtd 9/04/09 from EAST TEXAS MEDICAL CENTER's Counsel to Giraldo's Counsel attached hereto as Exhibit H). Moreover, even though EAST TEXAS MEDICAL CENTER had not found MAURICIO GIRALDO, M.D.'s performance lacking to the point of necessitating a report to the (NPDB), EAST TEXAS MEDICAL CENTER still made false statements regarding MAURICIO GIRALDO, M.D., which resulted in his being forced to withdraw his application for privileges at Baylor. (*See* NPDB report attached

hereto as Exhibit I). Even more disturbing was the knowledge that he could not seek privileges anywhere else as long as EAST TEXAS MEDICAL CENTER continued to make these negative and untrue allegations against him. Even when recently confronted about the erroneous reports by EAST TEXAS MEDICAL CENTER, the hospital still denies it reported that MAURICIO GIRALDO, M.D. had been summarily suspended. (*See* Exhibit H). As such, MAURICIO GIRALDO, M.D. is unable to practice surgery and his medical career is ruined.

## CAUSES OF ACTION

### COUNT I: REQUEST FOR INJUNCTIVE RELIEF

20.

MAURICIO GIRALDO, M.D. realleges and reasserts all allegations and statements contained in Paragraphs 1 through 19 above as if set forth in full herein in Count I.

21.

This purpose of this petition is to request a preliminary injunction prohibiting Harrison and EAST TEXAS MEDICAL CENTER or any of its staff members or employee's from releasing untrue and negative information regarding MAURICIO GIRALDO, M.D., and instead, requires they provide non-adverse (neutral) information until a final hearing can be held on the merits of the case.

22.

Injunctive relief is authorized by general principles of equity, federal statutes, or state law. *See eBay Inc. v. Merc-exchange, L.L.C.*, 547 U.S. 388, 391 (2006). According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.* at 391.

23.

In the matter involving EAST TEXAS MEDICAL CENTER, MAURICIO GIRALDO, M.D. has already suffered irreparable injury to his medical practice, his reputation, his family, and his career, and will continue to do so. Unless Defendants are prohibited from discharging defamatory information about him, MAURICIO GIRALDO, M.D. will be unable to obtain privileges at any hospital. As a direct and proximate result of EAST TEXAS MEDICAL CENTER's inadequate investigation and bad faith, MAURICIO GIRALDO, M.D. will continue to suffer substantial damages to his reputation and his practice. He has incurred and will continue to incur a tremendous loss of revenues due to the actions of the Defendants. Defendants' conduct denied him due process right and caused him significant damages.

24.

There is no adequate remedy at law for the injuries MAURICIO GIRALDO, M.D. has suffered and will continue to suffer. Money damages cannot prevent Defendants from continuing its disbursement of egregiously false information.

25.

In considering the balance of hardships, the injury MAURICIO GIRALDO, M.D. continues to face far outweighs any injury that would be sustained by Defendants as a result of injunctive relief. Likewise, injunctive relief in this matter would not adversely affect public policy or public interest. Allowing a highly skilled surgeon and physician to practice medicine would have the opposite effect; the public would benefit significantly from such injunctive relief.

26.

Inasmuch as MAURICIO GIRALDO, M.D. has met the equity factors required for injunctive relief, he seeks the following relief:

A. That Defendants be estopped from communicating or publishing disparaging and inaccurate information regarding MAURICIO GIRALDO, M.D..

B. That Defendants be directed to communicate or publish only non-controversial information until a hearing can be conducted on which to establish the merits of his request.

## COUNT II: HCQIA 42 U.S.C. §11101 *ET SEQ.* AND TEXAS HEALTH & SAFETY CODE § 241.01

27.

MAURICIO GIRALDO, M.D. realleges and reasserts all allegations and statements contained in Paragraphs 1 through 26 above as if set forth in full herein in Count II.

28.

The basis for this request for injunctive and declaratory relief under Count II is the violation of the Health Care Quality Improvement Act (HCQIA) 42 U.S.C.A. § 11101 *et seq.* and Texas Health & Safety Code § 241.01.

29.

The HCQIA requires that a professional review action must be taken: (a) in the reasonable belief the action is taken in the promotion of quality health care; (b) after a *reasonable* effort to obtain the facts of the matter; (c) *after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances*, and (d) in the reasonable belief such action is warranted

11

*by the facts* known after *reasonable* effort to obtain the facts and *after providing for adequate notice and hearing procedures*. 42 U.S.C.A. § 11112(a) (emphasis added). The EAST TEXAS MEDICAL CENTER failed to comply with these provisions of the HCQIA.

30.

Further provisions of the HCQIA pursuant to adequate hearing and notice specifically state that a physician under such review must be given notice stating: (a) that a professional review action has been proposed against the physician, (b) the reasons for the action, (c) that the *physician has the right to request a hearing* on the proposed action, (d) any time limit "(*of not less than 30 days*)" within which to *request* such a hearing, and (e) *the summary of his/her rights in the hearing*. 42 U.S.C.A. § 11112(b)(1). EAST TEXAS MEDICAL CENTER failed to comply with these provisions of the HCQIA.

31.

HCQIA provides for immunity to peer reviewers when these provisions are met. Furthermore, under the Texas Hospital Licensing Law, all hospitals that are licensed must provide procedural due process. *See* Texas Health & Safety Code § 241.01. Procedures outlined in EAST TEXAS MEDICAL CENTER Bylaws also provide the right to notice and appeal. (*See* Sect. X of EAST TEXAS MEDICAL CENTER Bylaws attached hereto as Exhibit C). Because EAST TEXAS MEDICAL CENTER acted with malice and failed to provide MAURICIO GIRALDO, M.D. with due process pursuant to those outlined in HCQIA, Texas Health & Safety Code and its own Bylaws, the Defendants forfeited their immunity from damages. Therefore, MAURICIO GIRALDO, M.D. is entitled to damages from the Defendants for their tortuous conduct.